UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CIVIL DIVISION

| | |
|---|---|
| STEPHANIE SWEET, as next of kin and trustee for the heirs of the ESTATE OF JOEL BOWLSBY, on behalf of the Estate and his Heirs,<br><br>       Plaintiff,<br>vs.<br><br>E-Z DISTRIBUTION, LLC (d/b/a EZ KRATOM),<br><br>       Defendant. | CASE NO:<br><br>**COMPLAINT FOR WRONGFUL DEATH AND DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

This is a product liability action against the manufacturer, distributor, and seller of Kratom, a non-prescription dietary supplement. Plaintiff, STEPHANIE SWEET, as next of kin and trustee for the heirs of the ESTATE OF JOEL BOWLSBY, and on behalf of his Estate and his heirs, brings this Complaint and demand for jury trial against Defendant, E-Z DISTRIBUTION, LLC (d/b/a EZ KRATOM), and alleges as follows:

## II. STATEMENT OF PARTIES

1. The ESTATE OF JOEL BOWLSBY (hereinafter "the Estate") is opening a probate action by the Hennepin County Court of Minnesota.

2. Joel Bowlsby (hereinafter "Mr. Bowlsby") was the father of two (2) minor children, all of whom reside in Hennepin County, Minnesota.

1

3. STEPHANIE SWEET (hereinafter "Mrs. Sweet"), the wife of Mr. Bowlsby, is being duly appointed by Hennepin County Probate Court as trustee of the heirs of the Estate.

4. Mrs. Sweet was and is a resident of the state of Minnesota. She brings this claim on behalf of the Estate and its beneficiaries, which include herself and her two minor children, Mr. Bowlsby's biological children.

5. Mr. Bowlsby's children include O.B. (a minor) and A.B. (a minor).

6. Defendant, E-Z Distribution LLC (d/b/a EZ KRATOM) (hereinafter "EZ KRATOM"), is a domestic limited liability company existing and doing business pursuant to the laws of the state of Florida, with its principal place of business in New Port Richey, Florida. EZ KRATOM was and is a Florida limited liability company engaged in the marketing, sale, and distribution of Kratom products to consumers nationwide, including consumers in Hennepin County, Minnesota. At all times material and relevant, EZ KRATOM did and continues to do business in the state of Minnesota.

7. At all times material and relevant, Defendant conducted business in the state of Minnesota and did in fact market, distribute, and supply Kratom products to consumers within the state of Minnesota, including Joel Bowlsby.

### III. JURISDICTION AND VENUE

8. This action is for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, attorneys' fees, and declaratory relief. 28 U.S.C. § 1332(a).

9. The U.S. District Court for the Middle District of Florida has subject matter jurisdiction over this case because it satisfies the requirements of 28 U.S.C § 1332, such that the matter can be heard on the basis of diversity jurisdiction.

10. Defendant, EZ KRATOM, is a limited liability company with citizenship in New Port Richey, Florida. Zackori R. Scalf is the only member of EZ KRATOM. Zackori R. Scalf is domiciled in and a citizen of New Port Richey, Florida. Plaintiff is domiciled in and a citizen of Hennepin County, Minnesota. There is complete diversity of the parties.

11. Venue is proper in the U.S. District Court for the Middle District of Florida, because events giving rise to this action happened in or are closely related to this District.

12. At all times relevant and material, Plaintiff's injuries and causes of action accrued in Hennepin County, Minnesota.

13. Pasco County, Florida, is where Defendant, EZ KRATOM, continuously transacts business and continuously committed torts upon which Plaintiff's claims are based.

## IV. STATEMENT OF FACTS

**A.** **Kratom is a deadly drug that is being marketed as a safe dietary supplement in the United States.**

14. Kratom is an herbal extract derived from the leaves of *Mitragyna speciosa*, a tropical tree native to Southeast Asia.

15. The nature and extent of Kratom's impact upon human physiology is the topic of ongoing study.

16. Although not formally classified as an opiate, Kratom contains dozens of psychoactive compounds or alkaloids, many of which are not understood.

17. The two (2) most-studied alkaloids are mitragynine and 7-hydroxymitragynine. These two alkaloids bind to the same opioid brain receptors as morphine. Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation.

18. Kratom's serious health risks include abuse, dependence, addiction, overdose, and death.[1] Scientific literature documents serious concerns regarding the toxicity of Kratom in multiple organ systems. Consumption of Kratom can lead to many adverse health impacts, including respiratory depression, nervousness, agitation, aggression, sleeplessness, hallucinations, delusions, tremors, loss of libido, constipation, skin hyperpigmentation, nausea, vomiting, severe withdrawal, seizures, psychosis, and lung damage.

19. Kratom is not approved for medical purposes, and Kratom is illegal in several cities and states, including Alabama; Arkansas; Indiana; Rhode Island; Vermont; Wisconsin; San Diego, California; Denver, Colorado; Sarasota County, Florida; Jerseyville, Illinois; and Union County, Mississippi.

---

[1] See FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www.fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-kratom-drug-products-marketed-opioid) (last accessed March 21, 2023); see also DOJ DEA Drug Fact Sheet – Kratom (https://www.dea.gov/sites/default/files/2020-06/Kratom-2020_0.pdf) (last accessed March 21, 2023).

20. Kratom is not FDA approved. The FDA issued numerous warnings against the use of products containing Kratom or its psychoactive compounds and has warned against the sale of the product for pain treatment and other medical uses.[2]

21. Kratom is not approved for importation and distribution in interstate commerce without a premarket substantiation that the product containing Kratom is reasonably safe for human consumption. The FDA has issued warnings to companies importing and selling Kratom for human consumption and for medicinal purposes.

22. Nonetheless, products containing Kratom are sold online and at numerous retail outlets throughout the country, including gas stations, vape shops, and head shops.

23. Companies and individuals that produce and sell Kratom, including EZ KRATOM, present Kratom as an all-natural supplement which is safe for consumption and legal to sell in the United States.

24. By sidestepping consumer protections, the Kratom industry has grown dramatically in the United States. This profitable black-market industry has generated enough ill-gotten gains to fund the development of trade organizations like the American Kratom Association (AKA) and has mobilized lobbyists, a network of Kratom advocates, and industry-backed researchers to try and legitimize the ongoing profiteering of those in the Kratom business, despite their ongoing failure and refusal

---

[2] See FDA Statement, Statement from FDA Commissioner Scott Gottlieb, M.D. on FDA advisory about deadly risks associated with Kratom (https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom) (last accessed March 21, 2023).

to comply with the clear and mandatory standards for establishing safety and efficacy of new dietary ingredients, supplements, and drugs before they are sold to the public.

25. With the proliferation of Kratom products, U.S. consumers are paying a heavy price, including a growing number of deaths caused by Kratom.

26. The deceptive marketing and sale of these products encourages consumers to experiment with mysterious and dangerous compounds in lieu of seeking appropriate and approved medical treatments that can be safely supervised by medical professionals.

27. In recent years, several Kratom manufacturers, including Defendant, EZ KRATOM, began importing, producing, and marketing concentrated Kratom in capsule and powdered form.

28. Defendant, EZ KRATOM, misrepresented and misled consumers about the risks of Kratom, and this led to the tragic death of Joel Bowlsby.

## B. Joel Bowlsby suffered a preventable and untimely death caused by Kratom.

29. This case is about the unnecessary death of Joel Bowlsby; a death that could have and should have been prevented.

30. Joel Bowlsby was a loving husband and father to whom family meant everything.

31. Thirty-nine (39) year old Joel Bowlsby resided in Hennepin County, Minnesota, with his wife and children.

32. On September 15, 2021, Mr. Bowlsby was at home with his wife, where he was building a deck outside.

33. Suddenly, Mr. Bowlsby fell onto the concrete and became unresponsive.

34. Mrs. Sweet, Mr. Bowlsby's wife, made her way outside, saw Mr. Bowlsby lying on the concrete, immediately began chest compressions, and dialed 911.

35. Minutes later, EMS arrived and transported Mr. Bowlsby to the nearest hospital.

36. Mr. Bowlsby was put on life support and later that evening was pronounced dead.

37. Subsequently, an autopsy was performed, and the cause of death was identified as "acute mitragynine (kratom) toxicity."

38. Mr. Bowlsby routinely and regularly purchased Kratom online from Defendant, EZ KRATOM, and Defendant sold various Kratom strains.

39. All brands were packaged in New Port Richey, Florida, by Defendant, EZ KRATOM, and shipped to Mr. Bowlsby's home in Hennepin County, Minnesota.

40. Plaintiff brings this lawsuit within two (2) years of decedent's date of death.

## V. DAMAGES AND CAUSES OF ACTION

41. The injuries from the dangerous and defective Kratom products that killed Mr. Bowlsby caused and will continue to cause economic losses to the Estate in the form of medical expenses, funeral expenses, lost wages, and loss of earning capacity, in an amount to be determined by a jury.

42. Mr. Bowlsby's death caused and continues to cause Plaintiff's beneficiaries and the Estate non-economic damages, including pain and suffering,

loss of support and services, and loss of parental companionship, instruction, and guidance, for mental pain and suffering in an amount to be determined by a jury.

43. Mr. Bowlsby suffered an untimely death as a direct and proximate result of the Kratom products that were manufactured, marketed, distributed, and sold by Defendant, EZ KRATOM.

44. The Estate and its beneficiaries have incurred and will continue to incur enormous general and special damages in an amount to be determined by a jury.

45. Defendant is liable for the damages caused to the Estate and its beneficiaries.

## COUNT ONE – E-Z DISTRIBUTION, LLC
## (STRICT LIABILITY FAILURE TO WARN PURSUANT TO THE RESTATEMENT SECOND OF TORTS § 402A)

46. Defendant, EZ KRATOM, was engaged in the business of promoting, manufacturing, distributing, and selling various Kratom products, including those that caused Mr. Bowlsby's ultimate passing.

47. The Kratom products that Mr. Bowlsby purchased and ingested were expected to and did reach Mr. Bowlsby without substantial change in condition at the time they left Defendant's hands.

48. EZ KRATOM products were constantly sold with inadequate warnings regarding instructions for use, no recommended dosage, and known risks of the products, including the risks of abuse, dependence, addiction, overdose, and death.

49. An ordinary consumer would reasonably conclude that EZ KRATOM products are unreasonably unsafe when sold without warnings or instructions about

8

the serious adverse health risks, including the risk of overdose and death suffered by Mr. Bowlsby.

50. In addition, at the time of manufacture, the likelihood that EZ KRATOM products would cause the serious harms inflicted on Mr. Bowlsby rendered EZ KRATOM's lack of warnings and instructions completely inadequate.

51. At the time and on the occasion in question, Mr. Bowlsby used EZ KRATOM products for the very purposes intended and promoted.

52. Without proper warnings and instructions, the Kratom products were unreasonably dangerous, unfit for their intended use, and highly dangerous and defective.

53. If the products had been sold with appropriate warnings and instructions regarding health risks, including but not limited to the risks of overdose and death, then Mr. Bowlsby's overdose and death from Kratom would not have occurred.

54. EZ KRATOM is strictly liable for all damages caused by its failure to provide adequate warnings and instructions that would have prevented the death caused by the defective and unreasonably dangerous nature of its Kratom products.

55. EZ KRATOM is liable for all damages caused by its negligent failure to provide adequate warnings and instructions that would have prevented the death caused by the defective and unreasonably dangerous nature of its Kratom products.

56. EZ KRATOM also had a continuing, post-sale duty to warn regarding the unreasonable risk of harm associated with the Kratom products after they had been distributed to Mr. Bowlsby.

57. After Mr. Bowlsby began purchasing and ingesting EZ KRATOM's Kratom products, EZ KRATOM received increasing actual and constructive notice about specific risks and dangers associated with the Kratom products, including the risk of death.

58. After Mr. Bowlsby began purchasing and ingesting EZ KRATOM's Kratom products, EZ KRATOM breached its duty to issue adequate post-sale instructions and warnings to reduce and prevent the foreseeable risk of harm and death to Mr. Bowlsby from EZ KRATOM's products.

59. EZ KRATOM failed to exercise reasonable care to provide adequate post-sale instructions and warnings to Mr. Bowlsby and other consumers about the serious health risks and dangers of its Kratom products, including the risk and danger of death.

60. As a direct and proximate result of the lack of reasonable and adequate instructions or warnings regarding the defects in Defendant's Kratom products, Joel Bowlsby overdosed and died, causing irreparable injury and damages to the ESTATE OF JOEL BOWLSBY as described herein.

## COUNT TWO – E-Z DISTRIBUTION, LLC
## (STRICT LIABILITY DESIGN AND MANUFACTURING DEFECT PURSUANT TO THE RESTATEMENT SECOND OF TORTS § 402A)

61. At the time EZ KRATOM manufactured the Kratom products sold to and consumed by Mr. Bowlsby, the products were not reasonably safe as designed.

62. Under a Risk-Utility analysis, the likelihood that the Kratom products would cause Mr. Bowlsby harm, and the seriousness of those harms (including death), outweighed Defendant's burden to design Kratom products that would have prevented those harms and adverse effects.

63. Under a Consumer Expectation analysis, the Kratom products were more dangerous than the ordinary consumer would reasonably expect, considering the products' intrinsic nature, relative cost, severity of potential harm (including death), lack of warning, recommended dosage, and the cost and feasibility of minimizing such risk.

64. EZ KRATOM's products that were sold to and consumed by Mr. Bowlsby also contained manufacturing defects. The Kratom products manufactured by EZ KRATOM departed from their intended design in that the products were adulterated and/or did not conform to the safe design and purity standards required and specified by Defendant.

65. EZ KRATOM was aware that it was unable to adequately conform the manufacturing process to achieve products that were reasonably safe for human consumption.

66. The Kratom products sold to Mr. Bowlsby were unreasonably dangerous beyond the expectations of the ordinary consumer and were unfit for their intended use.

67. At the time and on the occasion in question, Defendant EZ KRATOM's Kratom products were being used by Mr. Bowlsby for the purpose for which they were marketed and intended, and the products were defective, unsafe, and unreasonably dangerous.

68. As a direct and proximate result of the defects in Defendant's Kratom products, Joel Bowlsby overdosed and died, causing irreparable injury and damages to the ESTATE OF JOEL BOWLSBY as described herein.

**COUNT THREE – E-Z DISTRIBUTION, LLC
(BREACH OF WARRANTY PURSUANT TO
FLA. STATE. §§ 672.313; 672.314; & 672.315.)**

69. Defendant, EZ KRATOM, expressly and impliedly warranted that its Kratom products were reasonably fit for their intended purposes of improving health and well-being and as safe dietary supplements.

70. EZ KRATOM warranted, without limitation, that its Kratom products were "100% Organic," "100% Pure," and "GMO free."

71. EZ KRATOM also warranted that its Kratom products conformed with the express representations.

72. EZ KRATOM issued these warranties to develop and promote the sale of its Kratom products through its distribution chain, including the sales to Mr. Bowlsby.

73. Defendant EZ KRATOM's warranties related to material facts regarding the safety and efficacy of its Kratom products.

74. Defendant EZ KRATOM's warranties were part of the basis of the bargain for Mr. Bowlsby's purchase of its Kratom products.

75. Defendant EZ KRATOM's warranties were untrue. Its Kratom products did not conform to the representations that were made.

76. Defendant, EZ KRATOM, was at all times relevant hereto in privity with Joel Bowlsby.

77. As a direct and proximate result of the breach of Defendant's warranties of Kratom products, Joel Bowlsby overdosed and died, causing irreparable injury and damages to the ESTATE OF JOEL BOWLSBY as described herein.

## COUNT FOUR – E-Z DISTRIBUTION, LLC
## (FRAUDULENT MISREPRESENTATION)

78. Defendant, EZ KRATOM, made misrepresentations of material facts about its Kratom products and intentionally concealed information about the products from Mr. Bowlsby during the time he bought and used the products.

79. Defendant, EZ KRATOM, referred to its Kratom products as: helping to support mood, enhance well-being, boost positive feelings, promote relaxation, and could improve focus.[3]

80. Defendant, EZ KRATOM, failed in its duty to disclose known material facts to Plaintiff regarding Kratom products, including but not limited to:

---

[3] See 7 Facts About White Maeng Da Kratom Powder (https://ezkratom.com/7-facts-about-white-maeng-da-kratom-powder/) Last accessed March 21, 2023.

13

      a. The health risks associated with regular consumption of Kratom products.

      b. Information regarding adverse events associated with Kratom products.

      c. The risk of addiction, overdose, and death associated with Kratom products.

81. Additional misrepresentations and concealment included, but were not limited to:

      a. Failing to disclose that Kratom products may cause death.

      b. Falsely representing that Kratom products are completely safe and natural.

      c. Falsely representing that its Kratom products are lab tested for quality and purity.

82. The above representations and omissions made by Defendant, EZ KRATOM, were material and were made with the intent to persuade and induce Mr. Bowlsby to regularly consume its Kratom products.

83. Defendant, EZ KRATOM, made the above representations or omissions knowing them to be false misrepresentations, or Defendant was ignorant of the truth of the assertions.

84. The above representations and omissions are reflected in EZ KRATOM's system for marketing its products. Defendant, EZ KRATOM, unlawfully promoted

and sold the unreasonably dangerous Kratom products to consumers, including Joel Bowlsby.

85. Defendant, EZ KRATOM, made the above misrepresentations or omissions with the intention and knowledge that consumers would select the Kratom products for regular consumption, for the purposes identified in its marketing.

86. Mr. Bowlsby relied upon and was induced to act in reliance on Defendant EZ KRATOM's misrepresentations and omissions when he in fact purchased the Kratom products under the assumption that the products were safe and completely natural dietary supplements.

87. As a direct and proximate result of the breach of the warranty regarding the Kratom products, Joel Bowlsby overdosed and died, causing irreparable injury and damages to the ESTATE OF JOEL BOWLSBY as described herein.

### COUNT FIVE – EZ DISTRIBUTION, LLC (NEGLIGENCE)

88. As a manufacturer, distributor, and seller of Kratom, EZ KRATOM had a duty to reasonably investigate and inspect these Kratom products before selling them to ensure they were safe for human consumption. Defendant also had a duty to ensure that its Kratom products being sold were not adulterated or misbranded, and a duty to ensure its Kratom products did not contain false representations of material facts.

89. When Defendant, EZ KRATOM, sold its Kratom products to Mr. Bowlsby, Defendant knew or should have known that its Kratom products were not FDA approved and were unreasonably dangerous for human consumption.

Knowledge of Kratom's dangers was readily available from news articles, news segments, medical literature, FDA, and the American Kratom Association.

90.	Defendant, EZ KRATOM, packaged and shipped Kratom products to consumers, including Joel Bowlsby, directly from New Port Richey, Florida.

91.	Defendant, EZ KRATOM, knew or should have known that the Kratom products packaged, shipped, and sold to consumers like Joel Bowlsby were adulterated, misbranded, lacked adequate warning labels and dosage instructions, and carried serious risks of injury and death to consumers, including Joel Bowlsby.

92.	Defendant, EZ KRATOM, breached its duties of care in selling Kratom products in one or more of the following ways:

    a. Defendant knew of or should have known of Kratom's potential to cause serious side effects, including tolerance, addiction, overdose, and death.

    b. Defendant knew or should have known that they were unlawfully selling Kratom products to customers even though the unreasonable health risks of such use were not properly understood, identified, disclosed, approved, or regulated.

    c. Defendant knew or should have known that its disclaimers were a sham attempt to avoid responsibility for Kratom products that were not safe for human consumption.

    d. Defendant negligently passed on to consumers, including Joel Bowlsby, representations about the Kratom products, including representations that the Kratom was safe and pure.

93. EZ KRATOM's negligence was a substantial contributing factor and proximate cause of Mr. Bowlsby's death, warranting an award for damages to Plaintiff, the ESTATE OF JOEL BOWLSBY.

### CLAIMS FOR DAMAGES COMMON TO ALL COUNTS
### CLAIM OF PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE AND HEIRS

94. As a direct and proximate result of the negligence and misrepresentations of Defendants which caused the untimely death of Joel Bowlsby, the trustee for the heirs of his estate sets forth the forgoing claims for the decedent's estate and the decedent's heirs pursuant to Florida Statutes § 768.21 and § 46.021.

### CLAIM OF PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE OF JOEL BOWLSBY

95. The ESTATE OF JOEL BOWLSBY has in the past suffered and will in the future continue to suffer the following damages:

    a. Loss of earnings of Joel Bowlsby from the date of death, including loss of support and services and including contributions in kind with interest;

    b. Medical or funeral expenses, or both, that have been incurred due to the death of Joel Bowlsby, which have become a charge against her estate and were paid by or on behalf of the decedent.

### CLAIM OF PERSONAL REPRESENTATIVE ON BEHALF OF SURVIVING CHILDREN

96. Stephanie Sweet as the surviving spouse, and O. B. (a minor) and A.B. (a minor), as the surviving children of Joel Bowlsby, have in the past suffered, and will in the future continue to suffer, the following damages:

      a.    Loss of future support and services from the date of Joel Bowlsby's death, with interest;

      b.    Loss of spousal and parental companionship, instruction, guidance, and for mental pain and suffering from the date of death.

## VI. PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

**WHEREFORE**, the ESTATE OF JOEL BOWLSBY, by and through Mr. Bowlsby's wife, STEPHANIE SWEET, and on behalf of all beneficiaries, respectfully requests:

(a) A jury be impaneled to hear this case;

(b) Judgment against Defendant, E-Z DISTRIBUTION LLC, for wrongful death, general and special damages in an amount to be proven at trial;

(c) Reasonable attorney's fees and costs; and

(d) Such other relief as the Court deems just and proper under the circumstances of this case.

Dated: March 21, 2022

                                                          Respectfully submitted,

                                                          Michael J. Cowgill, Esq.
                                                          Florida Bar No. 1010945
                                                          Tamara J. Williams, Esq.
                                                          Florida Bar No. 127625

              **mctlaw**
              1605 Main Street, Suite 710
              Sarasota, FL 34236
              Telephone: 888.952.5242
              Facsimile: 941.952.5042
              Primary: mcowgill@mctlaw.com
              Primary: twilliams@mctlaw.com
              Secondary: hdiener@mctlaw.com

              *Attorneys for Plaintiff*