## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## CIVIL DIVISION

STEPHANIE SWEET, as next of kin and
trustee for the heirs of the ESTATE OF
JOEL BOWLSBY, on behalf of the Estate
and his Heirs,

          Plaintiff,

                            Case No. 8:23-cv-00631

v.

E-Z DISTRIBUTION, LLC (d/b/a EZ
KRATOM); NATORGANICS
DISTRIBUTION & MFG., LLC; FREEDOM
VAPOR, LLC; ZACKORI R. SCALF; JOHN
DOE as trustee for ECOM
MANAGEMENT TRUST; and JOHN
DOES 1 through 2,

          Defendant.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## SECOND AMENDED COMPLAINT, MOTION FOR MORE
## DEFINITE STATEMENT AND MOTION FOR EXTENSION OF TIME

Defendants, E-Z Distribution, LLC ("**EZK**"), Natorganics Distribution &

Mfg., LLC ("**Natorganics**"), Zackori R. Scalf ("**Mr. Scalf**"), and John Doe as trustee

for ECOM Management Trust ("**Ecom**") (EZK, Natorganics, Scalf, and Ecom may

be referred to as "**Defendants**"), pursuant to Rule 12(b)(6)&(e) *Fed.R.Civ.P.*, file

this their Motion to Dismiss Plaintiff, Stephanie Sweet, as next of kin and trustee

for the heirs of the Estate of Joel Bowlsby's ("**Plaintiff**"), Second Amended

Complaint, Motion for More Definite Statement, and Motion for Extension of Time and state as follows:

## I.  <u>INTRODUCTION AND BACKGROUND</u>

This lawsuit involves an alleged wrongful death in which Plaintiff alleges that her husband, Joel Bowlsby ("Decedent"), died from kratom purchased from EZK. Kratom is a plant from Southeast Asia whose leaves are ground into powder and sold in powder, capsule, and other forms. Decedent purchased kratom powder from EZK. This is Plaintiff's third Complaint. Plaintiff's first two complaints were solely against EZK. The Second Amended Complaint adds a count for negligence per se, which fails and can never state a cause of action, and sues not only EZK and EZK's suppliers, but also, without any factual basis, adds claims against EZK's and its suppliers' owner and managers, Mr. Scalf and Ecom.

Plaintiff's Second Amended Complaint conflates what should be a standard wrongful death action against a seller and its suppliers by asserting counts against individual owners and managers in the hope of generating a greater recovery and asserting for the first time an improper negligence per se count. All counts against Mr. Scalf and Ecom must be dismissed along with the count of negligence per se.

### A. <u>Original Complaint and First Amended Complaint</u>

On March 21, 2023, Plaintiff filed its Complaint against EZK. (D.E. 1). On May 12, 2023, Plaintiff filed its First Amended Complaint asserting five (5) Counts

against EZK and adding John Does (which were alleged to be the then unknown upstream suppliers). (D.E. 19). The Original Complaint and First Amended Complaint were nearly identical, save for Plaintiff's attachment of the Minnesota Court Order Appointing Trustee and adding John Does as defendants. On May 23, 2023, EZK filed an Answer and Defenses. (D.E. 21). Thereafter, the parties engaged in discovery. During discovery, EZK identified as upstream suppliers, amongst other suppliers, Natorganics and Freedom Vapor LLC ("**Freedom Vapor**").[1]

B. <u>Second Amended Complaint</u>

On August 31, 2023, Plaintiff filed a Second Amended Complaint ("**Second Amended Complaint**"). (D.E. 25). The Second Amended Complaint added four defendants in addition to EZK. These four defendants not only includes Natorganics and Freedom Vapor, who EZK identified as its upstream suppliers, but also Mr. Scalf and Ecom. The Second Amended Complaint asserts six counts: Count 1 for failure to warn; Count 2 for design or manufacturing defect; Count 3 for breach of warranty; Count 4 for fraudulent misrepresentation; Count 5 for Negligence; and, Count 6 for negligence per se based upon alleged violations of the Food, Drug, and Cosmetics Act and Dietary Supplement Health and Education Act. Each count in the Amended Complaint is asserted against all defendants. Count 6, the count for negligence per se, is a count not previously asserted.

---

[1] The undersigned counsel does not represent Freedom Vapor and this Motion does not concern Freedom Vapor.

### C.  Additional Defendants

EZK, the defendant in both the Original and First Amended Complaints, at times sold kratom products to Decedent. In discovery, EZK was forthcoming on providing names of all upstream suppliers and identified not only Natorganics, its upstream supplier, but Natorganics' upstream suppliers, Freedom Vapor and two other suppliers, CV DD Botanical Trading and JL Husein Hamzah Komp Batara Indah.[2] Mr. Scalf is the owner of both EZK and Natorganics.

As counsel explained to Plaintiff, kratom is normally purchased from suppliers in Southeast Asia. American banks, due to fraudulent banking activity involving Southeast Asia, are hesitant to maintain banking relationships with companies that frequently wire money to Southeast Asia. Therefore, to not disturb EZK's banking relationship with its customers, Natorganics was formed by Mr. Scalf to purchase kratom and sell such to EZK. Then, EZK will sell directly to its customers. EZK, far from hiding this fact, voluntarily supplied to Plaintiff the names of Natorganics' upstream suppliers, namely Freedom Vapor, CV DD Botanical Trading and JL Husein Hamzah Komp Batara Indah, even though Natorganics was not at the time a party. Ecom is the manager of Natorganics and Mr. Scalf is the owner of Ecom. Once again, the ownership of Ecom was never hidden. To the contrary, Ecom (along with Natorganics and Mr.

---

[2] Plaintiff chose not to add these two other upstream suppliers as Defendants.

Scalf) agreed to waive service of process. (D.E. 28). These good faith disclosures, discovery responses, and representations were made to increase judicial efficiency, reduce this Court's involvement, and facilitate this case's timely resolution. Plaintiff now asserts counts against not only relevant upstream suppliers (Natorganics and Freedom Vapor), but against Mr. Scalf and Ecom who are merely the owners or managers of EZK and/or Natorganics.

## II.   MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

### A.   *Federal Pleading Standards*

Pursuant to Rule 12(b)(6), *Fed.R.Civ.P.*, a party may move to dismiss an action for failure to state a claim. When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the facts in the complaint and limit its consideration to the pleadings and exhibits attached. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.*  Likewise, under *Iqbal* and *Twombly*, legal conclusions are not simply presumed true.

Rule 8(a)(2), *Fed.R.Civ.P.*, requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, *citing, Conley v. Gibson*, 355 U.S. 41, 47 (1957). This standard requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. While Rule 8 "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F. 3d 1183 (11th Cir. 2003).

For a fraud claim, the pleading standard is higher.  To allege fraud "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *Balaschak v. Royal Caribbean Cruises, Ltd.*, 2009 WL 8659594, *7 (S.D. Fla. 2009) (quoting *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F.App'x 81, 86 (11th Cir. 2008)).

**B.**   **Count 6 Must be Dismissed Against All Defendants as Plaintiff Cannot State A Cause Of Action Under the FDCA or DSHEA**

Plaintiff in newly added Count 6 asserts a cause of action for negligence per se based upon purported violations of Title 21 U.S.C. ch. 9 §301, otherwise known

as the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Dietary Supplement Health and Education Act ("DSHEA"). Plaintiff cites to sections of the FDCA and alleges "Defendants violated all above-referenced statutes by failing to notify the FDA of Kratom's ingredients before marketing and placing Kratom products into interstate commerce, by failing to undergo premarket substantiation to establish that Kratom is reasonably expected to be safe, and by mislabeling and misbranding their Kratom products." Second Amended Complaint, ¶124. Plaintiff states that, as a result of these alleged violations, "Defendants' violations of these federal statutory standards constitute negligence per se, warranting an award of damages against all Defendants." Second Amended Complaint, ¶128. Even assuming that Plaintiff's allegations are true, which Defendants deny, Plaintiff's claim fails as a matter of law.

The FDCA and DSHEA are enforced by the FDA and, in Florida, only the FDA, and do not create any private cause of action. Florida Courts have held:

> Under Florida law the violation of a federal regulation does not create civil liability based upon a theory of negligence per se in the absence of evidence "of a legislative intent to create a private cause of action." Where a statute or regulation does not expressly provide for a civil cause of action, the Court must look to the legislative intent of the statute to determine whether the legislative body enacting the law "intended to create the private remedy asserted." In general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public ... will not be construed as establishing a civil liability.

*Pantages v. Cardinal Health 200, Inc.*, 2009 WL 2244539, *2 (M.D. Fla. July 27, 2009).

The *Pantages* case arose when a medical device, regulated by the FDA through the FDCA, malfunctioned. Plaintiff brought a claim for negligence per se for violations of Part 820 of Tile 21 of the Code of Federal Regulations pursuant to authority granted to it by the FDCA. The Court, looking beyond the arguments of counsel, held that "there [was] a more fundamental problem with Plaintiff's claim for negligence per se… Florida law does not recognize such a claim." *Id*. "Plaintiff's claim fails to state a cause of action for which relief can be granted because Florida law does not recognize a claim based upon a theory of negligence per se claim for an alleged violation of [the FDCA]." *Id*. at *3. Going further, the Court held that dismissal should be with prejudice "because there is no set of facts which Plaintiff could offer that could establish a claim for negligence per se." *Id*. The Court's holding in *Pantages* is dispositive of Plaintiff's negligence per se count which must be dismissed with prejudice.

Assuming, *arguendo*, that Plaintiff attempts to distinguish *Pantages* in that Plaintiff's negligence per se count is based upon 21 U.S.C. §301, *et. seq.,* of the FDCA and not the Code of Federal Regulations under the authority of the FDCA, further analysis confirms dismissal. Using the test set forth in *Pantages* and other Courts interpreting Florida law, "[L]egislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly

provide for one." *Sorenson v. Prof. Compounding Pharmacists of Western PA, Inc.*, 191 So.3d 929, 934 (Fla. 2d DCA 2016), *citing*, *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 958 (Fla. 1994). In 21 U.S.C. §301, *et. seq.*, the Legislature's intent is clear that a private cause of action is not permitted in that 21 U.S.C. §337(a) states:

> (a) Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be **_by and in the name of the United States_**. Subpoenas for witnesses who are required to attend a court of the United States, in any district, may run into any other district in any proceeding under this section.
>
> (b) (1) **_A State may bring in its own name_** and within its jurisdiction proceedings for the civil enforcement, or to restrain violations, of section 341, 343(b), 343(c), 343(d), 343(e), 343(f), 343(g), 343(h), 343(i), 343(k), 343(q), or 343(r) of this title if the food that is the subject of the proceedings is located in the State.

21 U.S.C. §337(a)(b) (emphasis added). The legislature's intent, clearly, was to allow violations of the FDCA to be brought by the United States and, in limited circumstances, by States. As the Eleventh Circuit Court of Appeals has stated "actions for the enforcement, or to restrain violations of the FDCA 'shall be by and in the name of the United States'" and "[i]n no situation does the FDCA provide for a private cause of action." *Keller v. Strauss*, 480 Fed. Appx. 552, 554 (11th Cir. 2012). Simply put, there is no legislative intent that a private cause of action was created under the FDCA. *See also Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (holding that the "FDCA expressly prohibits private claims for violations of that statute, 21 U.S.C. §337(a), strongly evidencing a legislative intent *not* to create a private cause of action"); *Rounds v. Genzyme Corp.*,

2010 WL 5297180, *3 (M.D. Fla. Dec. 20, 2010); *Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1364 (M.D. Fla. 2015)(quoting the U.S. Supreme Court's holding in *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 349 (2001) and stating "Although 'citizen's may report wrongdoing and petition the FDA to take action, there is no private right of action under the FDCA").

The reasoning and holdings in *Pantages, Keller, Sorenson, Blinn,* and *Rounds* are clearly analogous to the instant case in that in all these cases the plaintiffs asserted claims based upon purported violations of the FDCA or a similar statute. In fact, Defendants' claim for dismissal in this case is even stronger in that §331 of the FDCA clearly reserves causes of actions to those brought "in the name of the United States." Accordingly, Count 6 of Plaintiff's Second Amended Complaint, asserting negligence per se must be dismissed with prejudice. *See Romer v. Corin Group, PLC,* 2018 WL 4281470, *4-5 (M.D. Fla. Sept. 7, 2018) (dismissing a count for negligence per se holding "Florida law does not recognize a claim based upon a theory of negligence per se for an alleged violation of the FDCA"); *Markland v. Insys Therapeutics, Inc.,* 270 F.Supp.3d 1381, 1331 (M.D. Fla. 2017)(dismissing a negligence per se action pursuant to the FDCA).

### C.  *Counts 1-6 as against Mr. Scalf and Ecom Must be Dismissed as Plaintiff has Failed to State a Cause Of Action*

In Counts 1-6, Plaintiff sues EZK, the entity that allegedly sold kratom to Decedent, and its suppliers, Natorganics and Freedom Vapor, but also Mr. Scalf

and Ecom who were, at the most, mere owners or managers of EZK and Natorganics. While the Second Amended Complaint is unclear on the exact basis for asserting individual liability on Mr. Scalf and Ecom (*see* Infra §II(D) on Defendants' Motion for More Definite Statement), it appears Plaintiff is attempting to pierce the corporate veil of EZK and/or Natorganics. The allegations in the Second Amended Complaint are inadequate to pierce the corporate veils.

A "general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008). The Florida Supreme Court has repeatedly stated "[t]he corporate entity is an accepted, well used and highly regards form of organization in the economic life of our state and nation" and "[t]heir purpose is generally to limit liability and serve as a business convenience." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120 (Fla. 1984), *citing to, Roberts' Fish Farm v. Spencer*, 153 So.2d 718, 721 (Fla. 1963). Due to such, "Florida... courts disregard the corporate entity in only the most extraordinary cases [and] [t]hose who seek to piece the corporate veil carry a heavy burden." *See In re Hillsborough Holdings Corp.*, 166 B.R. 461 (Bankr. M.D. Fla.), aff'd, 176 B.R. 223 (M.D. Fla. 1994); *see also In re Mongelluzzi*, 587 B.R. 392, 408 (Bankr. M.D. Fla. 2018) (holding courts "are reluctant to pierce the corporate veil and will do so only in exceptional cases where there has been extreme abuse of the corporate form").

To pierce the corporate veil, a plaintiff must allege and prove the following three elements:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and,
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*S-Fer Int'l, Inc. v Stonesheets*, LLC, 2016 WL 8808749, *3 (S.D. Fla. July 22, 2016) (quoting *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008)). This heightened pleading standard requires the Plaintiff to first allege and demonstrate that "the shareholders dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact nonexistent." *Id*. at *4.

As to this first element, the only "facts" that Plaintiff alleges to demonstrate that Mr. Scalf personally or through Ecom "dominated and controlled" either EZK or Natorganics "to such an extent that the corporation[s]' independent existence was in fact non-existent" and Mr. Scalf or Ecom were "in fact alter egos of the corporation[s]" is the fact that Mr. Scalf owns and manages EZK and that Mr. Scalf owns Ecom which manages Natorganics. Second Amended Complaint, ¶11 & 12.[3] Thereafter, without any other facts, Plaintiff infers and alleges:

---

[3] Plaintiff mentions other entities including K Krates, LLC and J&J Botanicals Logistics, LLC, but fails to explain how these entities, that may or may not be owned by Mr. Scalf, are relevant to piercing the veil of EZK and Natorganics.

> Each alter ego shares principals, membership, agents, and addresses of each other alter ego indicative of a corporate shell game. Because of apparent intentional concealment through the use of corporate shells and trust, some alter egos may be misnamed or misidentified, but each alter ego is on notice of this lawsuit based upon the already executed service of this complaint and the impending service of this second amended complaint. In short, EZ KRATOM and SCALF have employed a corporate web of deceit to avoid government regulation of Kratom, defraud creditors, and avoid accountability for the harm caused by Kratom, including the death of Joel Bowlsby.

Second Amended Complaint, ¶ 13.

The "law is clear that mere ownership by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil." *Gasparini*, 972 So.2d at 1055. To hold otherwise, as the Florida Supreme Court stated, "would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system." *Dania Jai-Alai*, 450 So.2d at 1120. Moreover, "[t]he fact that a closely held corporation compensates its sole shareholder and principal employee in the ordinary course of that corporation's business does not, without more, satisfy the tests for corporate veil-piercing." *In re Paul C. Larsen, P.A.*, 626 B.R. 446 (M.D. Fla. 2021) (quoting *Ally v. Naim*, 581 So. 2d 961, 963 (Fla. 3d DCA 1991). Finally, "[e]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained." *Gasparini*, 972 So.2d at 1055.

Plaintiff's allegations of "alter ego" and "corporate shell games" are merely

conclusory and fail to state a claim for piercing the corporate veil. *See S-Fer Int'l*, 2016 WL 8808749 at *4 (dismissing a corporate owner holding that allegations that the corporations "were, during their existence .. 'shell' corporations without a bona-fide corporate existence and were, in fact, the 'alter ego'" of the individual owner which were "utilized to defraud" were merely "conclusory"); *see also In re Paul C. Larsen, P.A.*, 610 B.R. 684, 688 (M.D. Fla. 2019) ("[e]ven if [Defendant] did not follow corporate formalities, this alone is not sufficient to pierce the corporate veil"). As a result, Mr. Scalf and Ecom must be dismissed.

Due to the fact that Plaintiff has not and cannot plead even the first element to pierce the corporate veil, the Court need not even address the remaining elements. *See S-Fer Int'l*, 2016 WL 8808749 at *4, n.2 (holding that the elements of piercing the corporate veil are written in the conjunctive with the failure to meet any of the requirements precluding a party from its requested relief). However, assuming, *arguendo*, that Plaintiff could fulfill the first element of alter ego, Plaintiff has also not pled sufficient facts to fulfill either one of the remaining two elements – that the corporate form was used fraudulently and the fraudulent use of the corporate form caused injury to Plaintiff.

The remaining two elements sound in fraud and allegations of fraud must be pled with particularity. *See* Rule 9(b), *Fed.R.Civ.P.*; *see also Balaschak*, 2009 WL at *7. Plaintiff must plead with particularity that both the corporate form was used

fraudulently and that the fraudulent use of the corporate form caused injury to Plaintiff. In particular, "Florida's high regard for the corporate ownership requires a showing that the corporation was specifically organized or used to mislead creditors or perpetrate fraud before a party can pierce a corporation's veil." *In re Paul C. Larsen, P.A.*, 610 B.R. at 688. Plaintiff's Second Amended Complaint also falls short of this pleading requirement.

The Second Amended Complaint other than bare assertions of "intentional concealment" and "a corporate web of deceit" designed to "defraud creditors" and "avoid accountability" fails to allege how either EZK or Natorganics were used for such purposes and how the corporate form caused injury to Plaintiff. *See Oginsky v. Paragon Properties of Costa Rica, LLC*, 784 F. Supp. 2d 1353, 1373-74 (S.D. Fla. 2011) (holding that "conclusionary allegations" that the entities at issue "'were nothing more than shell corporations' used by Defendants to 'commit a major fraud' do not save their claim" in that "these allegations do not explain how Defendants allegedly abused the corporate form, such that they should be held personally liable"). Also, the Second Amended Complaint fails to explain and cannot explain how the use of Natorganics as an upstream supplier of kratom to EZK somehow works a fraud upon Plaintiff or can cause injury to Plaintiff in that it is "settled law that entities upstream from the seller, including manufacturers and entities within the distribution chain which profit from the its sale, are liable."

*Conden v. Royal Caribbean Cruises, Ltd.*, 2021 WL 4973584, *6 (S.D. Fla. Feb. 22, 2021).

As stated above, EZK was forthcoming in providing relevant information on all upstream suppliers including Natorganics, and even the upstream suppliers of Natorganics, and has not objected to the inclusion of upstream suppliers as proper defendants. The bare assertion of a "corporate web of deceit" to include Mr. Scalf and Ecom as defendants is simply baseless as illustrated by the Plaintiff's complete lack of factual allegations relating to this point. Accordingly, the Second Amended Complaint, as it pertains to Mr. Scalf and Ecom, must be dismissed.

### D. *Alternatively Plaintiff Should Be Required To Provide A More Definite Statement with Respect to Mr. Scalf and Ecom*

Alternatively to dismissing all counts against Mr. Scalf and Ecom, this Court should require Plaintiff to provide a more definite statement pursuant to Rule 12(e), *Fed.R.Civ.P.*, as to Mr. Scalf and Ecom. The Second Amended Complaint appears to reincorporate each of the general allegations along, with the allegations in each of the preceding counts, into each subsequent count. This type of pleading is considered an improper shotgun complaint that is so vague and ambiguous that Mr. Scalf and Ecom cannot reasonably be expected formulate a response or identify their defenses.  *See Ferrell v. Durbin*, 311 Fed. App'x 253, 259 (11th Cir. 2009) ("In shotgun style pleading, the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief.  Neither this Court nor the district court is required to parse the complaint searching for

allegations or misrepresentations that could conceivably form the basis for each of Appellant's claims. Appellants were required to clearly connect each factual allegation to the appropriate count in the complaint in order to satisfy Rule 9(b)."). Shotgun pleadings have been repeatedly condemned by the Eleventh Circuit. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1128–34 (11th Cir. 2001) ("Shotgun pleadings ... impede[ ] the due administration of justice and, in a very real sense, amount[ ] to obstruction of justice.").

Further, in various respects, the Second Amended Complaint merely makes generalized allegations or merely refers to "defendants" without distinguishing the actions of each individual defendant. For example, Plaintiffs allege that Decedent purchased kratom online from EZK and that EZK purchased its kratom from upstream suppliers including Natorganics and Freedom Vapor. Second Amended Complaint, ¶53-54. Plaintiffs then go one to allege that "Scalf and his alter egos, including John Doe as trustee for Ecom, were directly involved in the importation, manufacture, distribution, and sale of Kratom to [EZK] and [Decedent]." Second Amended Complaint, ¶55. However, other than just being an owner and manager and the assumption that Mr. Scalf would have the level of involvement one would expect of any owner or manager there are no other facts on Mr. Scalf's involvement. Specifically, no facts are pled to demonstrate any "alter egos" of Mr. Scalf. *See Cummings v. Mitchell*, 2022 WL 301697, *1 (11th Cir.

2022) (upholding a dismissal of a shotgun pleading which pleading in part "failed to connect specific acts and facts to each defendant").

Shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll., 77 F.3d 364, 366 (11th Cir. 1996)*. As a result, the allegations in the Second Amended Complaint as to Mr. Scalf and Ecom fail to provide them with fair notice of the individualized claims against them in violation of Rule 8(a), *Fed.R.Civ.P.*, and requires a more definite statement. *See Tajalli v. Walmart Stores, Inc.*, 2013 WL 6081632, *2 (S.D. Fla. Nov. 19, 2013) (holding that "when faced with a shotgun complaint, the Eleventh Circuit encourages defendants to first make motions for a more definite statements"); *Toliver v. Bank of Am.*, 2014 WL 12616955, *2 (M.D. Fla. March 12, 2014).

### E. *Extension of Time to Respond to the Second Amended Complaint*

As the foregoing illustrates, the Defendants are collectively represented by the undersigned. Given the context of this Motion, Defendants EZK and Natorganics respectfully move this Court for an extension of time in which to file an answer and defenses to Counts 1-5 of the Second Amended Complaint following the Court's ruling on the above Motion to Dismiss and whether a Third Amended Complaint will be filed. This request is not made for the purposes of delay and is brought to serve the interests of judicial economy.

III.    <u>CONCLUSION</u>

In conclusion, Count 6 of the Second Amended Complaint, against all parties, must be dismissed with prejudice for failure to state a claim for which relief can be granted. Additionally, the Second Amended Complaint against Scalf and Ecom must be dismissed, or, in the alternative, Plaintiff should be required to provide a more definite statement. Finally, the Court should grant EZK and Natorganics an extension of time to answer the Second Amended Complaint following the Court's ruling on the above-referenced Motion to Dismiss.

WHEREFORE, Defendants, E-Z Distribution, LLC (d/b/a EZ Kratom), Natorganics Distribution & Mfg., LLC, Zackori R. Scalf, an individual, and John Doe as trustee for ECOM Management Trust, respectfully request this Court grant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, Motion for More Definite Statement, and Motion for Extension of Time, and any such other relief as this Court deems just and proper.

<u>Local Rule 3.01(g) Certification</u>

The undersigned counsel certifies that he has conferred via telephone on October 6, 2023 with the opposing party and the opposing party cannot agree with the Motion to Dismiss portion of the Motion. However, opposing counsel is not opposed to the Motion for Extension of Time as to EZK and Natorganics filing an Answer and Affirmative Defenses to Counts 1-5 until there is a ruling on the

Motion to Dismiss with the understanding that discovery served upon EZK and

Natorganics will not be met with objections founded upon the pending Motion to

Dismiss so long as such discovery is not directed towards any alleged liability of

Mr. Scalf and Ecom which understanding is acceptable to EZK and Natorganics.

     DATED this 10th day of October, 2023.

> */s Kenneth M. Curtin*
> Kenneth M. Curtin
> Florida Bar No. 087319
> Primary: Kenneth.Curtin@arlaw.com
> Secondary: lisa.stallard@arlaw.com
> Donald A. Mihokovich
> Florida Bar No. 858447
> Primary:  don.mihokovich@arlaw.com
> Secondary:  madeline.algarin@arlaw.com
> ADAMS AND REESE LLP
> 100 North Tampa Street, Suite 4000
> Tampa, FL 33602
> Telephone: (813) 402-2880
> Facsimile: (813) 402-2887
> ***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on October 10, 2023, this document was

electronically filed with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to all CM/ECF participants.

> */s/ Kenneth M. Curtin*
> Kenneth M. Curtin